IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JACQUELINE D. STOKES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:15-CV-1178-D |
| VS. | § | |
| | § | |
| JOHN F. KELLY, Secretary, U.S. | § | |
| Department of Homeland Security, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

Plaintiff Jacqueline D. Stokes ("Stokes"), an employee of the U.S. Department of Homeland Security, alleges that she was denied a reasonable accommodation for her vision-based disability and retaliated against for filing EEOC complaints, in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* ("Rehabilitation Act").  Stokes moves for summary judgment on her reasonable accommodation claim, and defendant John F. Kelly, Secretary of the U.S. Department of Homeland Security ("DHS"), moves for summary judgment dismissing all of Stokes's claims.  For the reasons explained, the court denies Stokes's motion, grants DHS's motion, and dismisses this action by judgment filed today.

I

Stokes has worked for DHS as an operations support specialist, primarily responsible for arranging employee travel, for 18 years.[1]  She is blind in her right eye and has reduced

---

[1]Because both sides move for summary judgment, the court will recount the evidence that is undisputed, and, when it is necessary to set out evidence that is contested, will do so

vision in her left eye.   From at least 2007 onward, she requested, and received, accommodations for her disability, including extra lamps for her desk, special light bulbs, a handheld magnifier, a magnifying device for her computer screen, and magnifying software for use with her computer.

In late 2012 or early 2013, Stokes filed an EEO complaint alleging that she was denied the accommodation of working in an office with natural light.   The parties settled this complaint, and DHS assigned Stokes to a workstation with natural light.   In March 2014 Stokes filed another EEO complaint, alleging that she had been directed to use a non-accessible computer, that her disability was improperly disclosed to other people, and that her supervisor, Jeffrey Sampson ("Sampson"), retaliated against her by creating a hostile work environment.   The March 2014 complaint was the original basis for Stokes's instant lawsuit in this court, but she also cites later events as factual bases for her claims.

On April 7, 2014 Stokes emailed her first-line supervisor, Sampson, and her second-line supervisor, Conchetta Mason ("Mason"), requesting that, when visual aids were to be used in meetings, she be given a large font printed copy or large font display as an accommodation for her disability.   Mason responded the same day, with copy to Sampson, stating that such materials would be provided in advance so that Stokes could review them at her desk or print out a copy that suited her needs.   Stokes contends, however, that DHS

---

favorably to the side who is the summary judgment nonmovant in the context of that evidence.   *See, e.g., GoForIt Entm't, LLC v. DigiMedia.com L.P.*, 750 F.Supp.2d 712, 718 n.4 (N.D. Tex. 2010) (Fitzwater, C.J.) (quoting *AMX Corp. v. Pilote Films*, 2007 WL 1695120, at *1 n.2 (N.D. Tex. June 5, 2007) (Fitzwater, J.)).

failed to grant this accommodation for subsequent meetings, including a September 17, 2014 meeting about work assignments; an August 4-6, 2015 appropriations law class; an August 12, 2015 administration team meeting; and an August 18, 2015 customer service training.

Before initiating the March 2014 EEO action, Stokes received the highest possible job performance rating of "Achieved Excellence" for the rating period of October 1, 2012 to September 30, 2013. For the next rating period—October 1, 2013 to September 30, 2014—Stokes received a lower but still favorable rating of "Exceeded Expectations." For the next rating period, however—October 1, 2014 to September 30, 2015—Stokes received a rating of "Unacceptable." During this period she received four written counseling letters that cited failure to follow supervisor instructions, disrespect, unprofessional behavior, mistakes in reviewing travel vouchers, and lack of attention to detail in her work. Mason performed one counseling, and the others were done by John Bourdon ("Bourdon"), another supervisor. Stokes asked for, but did not receive, supporting documentation for some of the errors cited in the counseling letters.

Stokes filed the instant lawsuit in this court in April 2015. On July 30, 2015 she filed another EEO complaint, alleging retaliation based on the letters of counseling. In May 2016 Stokes filed a supplemental complaint in this court that alleged retaliation based on the letters of counseling and the "Unacceptable" performance rating, and failures to reasonably accommodate her by providing meeting materials in advance.

Stokes now moves for partial summary judgment on her reasonable accommodation claim, and DHS moves for summary judgment dismissing all of Stokes's claims.

II

Each movant's summary judgment burden depends on whether she or it is moving for relief on a claim or defense for which she or it will have the burden of proof at trial. To be entitled to summary judgment on a claim or defense for which the movant will have the burden of proof, the moving party "must establish 'beyond peradventure all of the essential elements of the claim or defense.'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). This means that the moving party must demonstrate that there are no genuine and material fact disputes and that the moving party is entitled to summary judgment as a matter of law. *See Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). "The court has noted that the 'beyond peradventure' standard is 'heavy.'" *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

When the summary judgment movant will not have the burden of proof at trial on a specific claim or defense, then the moving party need only point the court to the absence of evidence of any essential element of the opposing party's claim or defense. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party does so, the nonmovant must go beyond her or its pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a

reasonable jury could return a verdict for the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant's failure to produce proof as to any essential element renders all other facts immaterial. *TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory where the nonmoving party fails to meet this burden. *Little*, 37 F.3d at 1076.

III

The court first turns to the cross-motions for summary judgment on Stokes's reasonable accommodation claim.

A

The Rehabilitation Act prohibits discrimination based on disability in any activity conducted by an executive agency. *See* 29 U.S.C. § 794. This prohibition includes both discrimination in employment, *see Flynn v. Distinctive Home Care, Inc.*, 812 F.3d 422, 425 (5th Cir. 2016), and retaliation against someone who has made a charge of discrimination, *see Cohen v. University of Texas Health Science Center*, 557 Fed. Appx. 273, 277 (5th Cir. 2014) (per curiam). The substantive standards for employment discrimination under the Rehabilitation Act are the same as those applied under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq. Flynn*, 812 F.3d at 426 (citing 29 U.S.C. § 794(d)).

Disability discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an

undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). To recover on a failure-to-accommodate claim, a plaintiff must show that: "(1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations." *Feist v. La., Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (footnote and internal quotation marks omitted). A "qualified individual" is one who can perform the essential functions of the employment position, either with or without a reasonable accommodation. 42 U.S.C. § 12111(8).

B

Stokes contends that DHS failed to grant her the reasonable accommodation of providing written materials for meetings either in advance or in large font. It is undisputed that Stokes is a qualified individual with a disability. Stokes posits that DHS knew of her disability and its limitations, specifically as it related to her request for meeting materials in accessible form. She maintains that the accommodation was reasonable, as evidenced by the fact that her supervisors at one point agreed to make this accommodation.

Stokes also maintains that DHS failed to provide this accommodation for five meetings: an April 7, 2014 meeting; a September 17, 2014 meeting about work assignments; an August 4-6, 2015 appropriations law class; an August 12, 2015 administration team meeting; and an August 18, 2015 customer service training. She posits that her second-line supervisor (Mason) even admitted in deposition testimony that there could have been five

occasions when requested meeting materials were not provided to Stokes. And Stokes contends that, although some meetings were presented by contractors, not DHS personnel, DHS had sufficient control over the contractors to request the materials in advance. Stokes also maintains that an employee is not required to reiterate a request for accommodation each time an identical situation arises.

DHS contends that it reasonably accommodated Stokes with respect to meeting materials. It maintains that materials were not provided to Stokes for the April 7, 2014 meeting because she did not request them until later that same day; that the September 17, 2014 meeting was led by an outside vendor, and Stokes cannot state whether any materials were even distributed at the meeting; that the August 4-6, 2015 appropriations law class was conducted by a contract vendor whose materials DHS did not control, and that, as an accommodation, Stokes was excused from taking the test administered during that training; that Stokes cannot recall whether materials were even distributed at the August 12, 2015 meeting; and that the August 18, 2015 training was conducted by a contractor, not DHS, and Stokes did not contact the contractor in advance to request the accommodation.

DHS also contends that Stokes admits that she can understand training material by listening, and that DHS provided her with a handheld portable magnifier that could be used during a meeting. It maintains that Stokes failed to engage in the interactive process by not raising more specific requests for some or all meetings, because Mason asked her to provide input on how any particular meeting or presentation medium should accommodate her, and Stokes did not object at the time. *See Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 737 (5th

Cir. 1999).

C

The court concludes that a trier of fact could not find that DHS failed to reasonably accommodate Stokes's disability. For some of the meetings Stokes cites, the lack of advance written materials was due to Stokes's failure to engage in the interactive process. *See id.* at 736 ("'[T]he responsibility for fashioning a reasonable accommodation is *shared* between the employee and the employer[.]'" (quoting *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 165 (5th Cir. 1996))). This is the case for the April 7, 2014 meeting, because Stokes only requested this particular accommodation after the meeting, as it is for the outside contractor meetings, because the record would only enable a reasonable trier of fact to find that Stokes in other instances asked the contractor directly for the written materials. Although an employee is not required to continually reurge a request for reasonable accommodation, she is obligated to be a full participant in the interactive process, rather than shifting responsibility for a dynamic accommodation entirely to her superiors. *See id.* at 737.

To the extent that written materials were not provided in advance for any other meetings, Stokes admits that she can normally understand by listening, and if listening fails, she requests after the meeting ends that the presenter provide her written materials. Because a reasonable accommodation is only required when necessary to perform an essential function of the job, a reasonable trier of fact could not find that DHS failed to reasonably accommodate Stokes's disability with regard to these other meetings. *See Brumfield v. City of Chicago*, 735 F.3d 619, 632 (7th Cir. 2013) (holding that duty to accommodate only arises

- 8 -

when employee requires accommodation to perform essential functions of job).

Accordingly, the court holds that DHS is entitled to summary judgment dismissing Stokes's reasonable accommodation claim, and that Stokes is not entitled to summary judgment on this claim.

## IV

The court next turns to DHS's motion for summary judgment on Stokes's retaliation claim.

## A

Because Stokes relies on circumstantial evidence to support her Rehabilitation Act retaliation claim, the claim is properly analyzed under the *McDonnell Douglas*[2] burden shifting framework.  *See Shannon v. Henderson*, 275 F.3d 42 (5th Cir. 2001) (per curiam) (unpublished table decision) (holding that *McDonnell Douglas* framework, which is used in cases brought under Title VII, applies to retaliation cases under Rehabilitation Act); *see also Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998) ("*McDonnell Douglas* provides the appropriate burden-shifting analysis for claims of unlawful retaliation under the ADA[.]").  As modified, the *McDonnell Douglas* framework consists of three stages.  First, Stokes must establish a prima facie case of retaliation by demonstrating that "(1) [she] engaged in a protected activity, such as filing an Equal Employment Opportunity complaint; (2) [DHS] took adverse employment action against [her]; and (3) a causal connection existed

_____

[2]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

between the protected activity and the adverse action." *Shannon*, 275 F.3d at 42 (citing *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999)).

Second, if Stokes establishes a prima facie case, the burden shifts to DHS to articulate a legitimate, nondiscriminatory reason for the employment action taken against Stokes. *See Cohen*, 557 Fed. Appx. at 278 (citing *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995)). DHS's burden is one of production, not proof, and involves no credibility assessments. *See, e.g., West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 385 (5th Cir. 2003). This "burden requires the production of admissible evidence in support of its nondiscriminatory reasons." *Hervey v. Miss. Dep't of Educ.*, 404 Fed. Appx. 865, 868 (5th Cir. 2010) (per curiam) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981)).

Third, if DHS meets its production burden by producing evidence of a legitimate, nondiscriminatory reason for the adverse employment action, "the presumption of discrimination created by [Stokes's] prima facie case disappears," *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005), and "the burden shifts back to [Stokes] to show that the nondiscriminatory justification was mere pretext for discrimination or retaliation," *Cohen*, 557 Fed. Appx. at 278 (citing *Seaman*, 179 F.3d at 300-01). Stokes must show that the legitimate, nondiscriminatory reason proffered by DHS "[is] not its true reason[], but [was] a pretext for discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *Burdine*, 450 U.S. at 253). "In the context of retaliation claims brought under the Rehabilitation Act, a plaintiff demonstrates pretext where she shows that

the adverse action would not have occurred but for the protected activity." *Cohen*, 557 Fed. Appx. at 278 n.6 (brackets and internal quotation marks omitted) (citing *Feist*, 730 F.3d at 454). Therefore, to survive summary judgment, Stokes must "offer sufficient evidence to create a genuine issue of material fact . . . that [DHS's] reason is not true, but is instead a pretext for discrimination[.]" *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (citation and internal quotation marks omitted) (describing standard in context of age discrimination case). At the summary judgment stage, of course, Stokes is only obligated to raise a genuine issue of material fact regarding pretext. *See, e.g., Jackson v. Fed. Express Corp.*, 2006 WL 680471, at *6 (N.D. Tex. Mar. 14, 2006) (Fitzwater, J.) ("Because [defendant] has satisfied its burden to produce a legitimate, nondiscriminatory reason for [plaintiff's] discharge, in order for [plaintiff] to survive summary judgment, [s]he must create a genuine and material fact issue regarding the ultimate question of discrimination.").

These three steps constitute the *McDonnell Douglas* framework. "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves*, 530 U.S. at 143 (alteration in original) (quoting *Burdine*, 450 U.S. at 253).

B

The court assumes *arguendo* that Stokes has established the first and third elements of a prima facie case of retaliation. As for the second element, the court concludes that the only adverse employment action that Stokes alleges is the "Unacceptable" performance

rating for the period from October 1, 2014 to September 30, 2015, which prevented her from receiving a Within Grade Increase in her pay for the next year. *See Fierros v. Tex. Dep't of Health*, 274 F.3d 187, 194 (5th Cir. 2001) (holding that denial of pay increase can be adverse employment action), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90, 92 (2003). Although Stokes contends that the counseling letters were also adverse employment actions, the law in this circuit holds that they are not. *See Hernandez v. Johnson*, 514 Fed. Appx. 492, 499 (5th Cir. 2013) (per curiam); *DeHart v. Baker Hughes Oilfield Operations, Inc.*, 214 Fed. Appx. 437, 442 (5th Cir. 2007) (per curiam) ("[T]here were colorable grounds for the warning and a reasonable employee would have understood a warning under these circumstances was not necessarily indicative of a retaliatory mind-set.").

## C

The court now turns to the second stage and determines whether DHS has met its burden to articulate legitimate, nonpretextual reasons for its adverse employment action towards Stokes. DHS maintains that it set out legitimate reasons for its action in the performance evaluation document itself: Stokes's lack of communication, failure to cooperate with coworkers, and lack of technical proficiency in her work product. And DHS posits that, to the extent the performance evaluation cites the counseling letters as support, the letters also each set out their independent factual bases: Stokes's lack of respect in confrontations with supervisors, mistakes in reviewing travel vouchers, and lack of technical proficiency. Accordingly, DHS has met its burden of producing evidence of legitimate,

- 12 -

nondiscriminatory reasons for its action.  *See Daigle*, 70 F.3d at 396.

D

Because DHS has met its burden of production, the burden shifts back to Stokes to present evidence that would enable a reasonable jury to find that DHS's reasons are pretextual.

Stokes contends that DHS acted in retaliation for her EEO activity.  She posits that, according to the summary judgment evidence, failing performance ratings were rare under second-line supervisor Mason; that Mason would have been open to a higher performance rating for Stokes if Bourdon had not insisted on the "Unacceptable" rating; that other coworkers and customers spoke favorably of Stokes's performance; and that Stokes never received supporting documents to justify the adverse actions against her.  She also maintains that her first-line supervisors (Sampson and Bourdon) inexplicably denied knowledge of her disability during discovery, even though they were aware that she had initiated EEO action.

The court concludes that a reasonable trier of fact could not find that DHS's reasons for the adverse performance rating are pretextual.  Stokes does not rebut the legitimate performance issues—mistakes in reviewing travel vouchers, other deficits in technical proficiency, and poor communication—underlying the "Unacceptable" performance rating.  Although she does offer a different version of the facts that led to some of the confrontations with Bourdon, she does not substantively contradict the many examples of technical errors and poor communication that would only enable a reasonable trier of fact to find that the "Unacceptable" rating is amply supported.  She has therefore failed to point to evidence that

- 13 -

she would not have been given the rating "but for" a retaliatory motive. *See Feist*, 730 F.3d at 454. Accordingly, the court holds that DHS is entitled to summary judgment dismissing Stokes's retaliation claim.[3]

*    *    *

For the reasons explained, the court denies Stokes's motion for partial summary judgment, grants DHS's motion for summary judgment, and dismisses this action by final judgment filed today.

**SO ORDERED**.

July 25, 2017.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

---

[3]In her complaint filed in this lawsuit, Stokes appears to allege that her confidential information was improperly disclosed to other employees, in violation of the ADA. DHS contends, and Stokes does not dispute, that administrative remedies were not exhausted for parts of this claim. Stokes also fails to set out the elements of this claim, or point to evidence of each element, in response to DHS's motion for summary judgment seeking dismissal of all claims. Accordingly, the court concludes that Stokes is not seeking relief based on this claim. *See Vaughn v. Mobil Oil Exploration and Producing Se., Inc.*, 891 F.2d 1195, 1198 (5th Cir. 1990) ("Ample authority exists that trial courts will not rule on claims—buried in pleadings—that go unpressed before the court.").

- 14 -